63 So.2d 599

**PIKE TAXI CO., Inc. v. PATTER-SON, Adm'r.**

I Div. 480.

Supreme Court of Alabama.

Dec. 18, 1952.

Rehearing Denied March 19, 1953.

Alex T. Howard, Mobile, for appellant.

D. R. Coley, Jr., Mobile, for appellee.

BROWN, Justice.

This action is by the personal representative of Geneva Jackson, deceased, authorized by § 123, Title 7, Code of 1940—the Homicide Act—against the appellant Pike Taxi Company, Inc., a corporation, for allegedly causing her death wrongfully.

The cause was submitted to the jury on "count one" of the complaint after the wanton count, "count two", was stricken or withdrawn by the plaintiff. Said count one avers that, "On, towit, the 2nd day of February, 1950, an agent, servant or employee of the defendant, while acting within the line and scope of his employment as such so negligently operated an automo-

bile at the intersection of Davis Avenue and Kennedy Street, both public streets in the City and County of Mobile, State of Alabama, that he caused the same to collide with and strike plaintiff's intestate, who was then and there a pedestrian at said intersection as a proximate consequence whereof, plaintiff's intestate was so severely injured that she died, all as the proximate consequence of the negligence of the agent, servant, or employee of the defendant while acting within the line and scope of his employment as such, hence this suit."

To said count the defendant interposed the plea of not guilty and a special plea of contributory negligence. The trial resulted in a verdict and judgment for the plaintiff for five thousand dollars, from which defendant appealed, and seeks a reversal on five assignments of error on the record.

The appellant's first assignment is predicated on the refusal of the general affirmative charge in the defendant's favor, requested by it in writing. The evidence is without dispute that plaintiff's said intestate was struck by defendant's taxi cab, a Plymouth automobile, at the intersection of Davis Avenue and Kennedy Street while being driven by defendant's agent, Henry Johnson, Jr., within the line and scope of his employment, and as a proximate consequence, she was so injured that she died a few days later.

■ The testimony of the several witnesses as to what occurred on said intersection at the time of said injury; as to the direction in which said cab was moving when it struck plaintiff's intestate; as to who was there and witnessed the occurrence, and as to whether or not the cab driver as well as plaintiff's intestate were crossing the intersection against a red light or whether they had the right of way of a green light,—was in sharp conflict. This testimony presented a case for jury decision as to whether or not the driver of the taxi cab was guilty of negligence proximately causing said intestate's injury and death and also as to whether or not said

intestate was guilty of contributory negligence proximately contributing to her own injury and death.

We are, therefore, of opinion that the court did not err in refusing said affirmative charge requested by the defendant in writing.

■ The second assignment of error is predicated on the ruling of the court in refusing to admit in evidence the report of the accident made by the police officers who investigated the accident to the Chief of Police of the City of Mobile, tending to show the direction in which said car was moving and also the direction in which the pedestrian, plaintiff's intestate, was moving at the time of the alleged injury. There is authority in the provisions of § 123, Title 36, Code of 1940, Pocket Part 1951, p. 172, Acts 1943, p. 549, § 7, for making such report. However, we find no provision in said act which requires a permanent record to be kept of such reports or that authorizes the filing of such reports as permanent records, bringing them within the influence of Title 7, § 393, Code of 1940, applied in Woodman of the World Life Ins. Soc. v. Guyton, 239 Ala. 216, 194 So. 655, and Alston v. State, 248 Ala. 163, 26 So.2d 877. On the contrary, we find that § 126, Title 36, Code of 1940, 1951 Pocket Part, Acts 1943, p. 550, § 11, provides *inter alia:*

"* * * No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident, except that the department shall furnish upon demand of any person who has, or claims to have made such a report, or, upon demand of any court, a certificate showing that a specified accident report has or has not been made to the director solely to prove a compliance or a failure to comply with the requirement that such a report be made to the director."

We are, therefore, of opinion that said assignment of error is without merit, and that said report of the police officers was properly disallowed as evidence in the case.

■■ Special written charges 9 and 12, made the basis of assignments of error 3

and 4, respectively, were invasive of the province of the jury and the court erred in giving such charges. The standard of care required was the care of a reasonably prudent man situated in like circumstances. That is the substance of what the authorities cited by appellee to sustain the court's action in giving such charges, hold. In 5 Am.Jur., § 167, it is observed:

"It is a well-established rule that the operator of a motor vehicle must keep a reasonably careful lookout so that he may be able to avoid collisions with persons or vehicles upon the highway. He is liable for running down a boy standing in, or moving diagonally across, the street ahead of him and unaware of his peril *if he fails to see the boy and avoid a collision because he permitted his attention to be diverted in another direction.*" [Italics supplied.]

The standard of care set up by the authorities is the care of a reasonably prudent man situated in like circumstances and that was the standard of care set up for the jury in the oral charge of the court.

In § 166, of 5 Am.Jur., it is said: "It is a general rule of law that part of the duty of an operator of a motor vehicle is to keep his machine always under control so as to avoid collision with vehicles, pedestrians, and other persons properly using the highway. * * * Whether or not an automobile is to be adjudged under control depends on the test or standard used and the particular circumstances and conditions surrounding the case. The cases defining the expression have varied in their forms of definition. Some say that 'having a car under control' is particularly synonymous with 'operating the car with due care.' * * *"

In the excerpt quoted in brief from Blashfield Cyclopedia of Automobile Law and Practice, § 1242, it may be observed is the following:

"The driver of an automobile must anticipate the presence of pedestrians on the highway, and he must exercise such caution as an ordinarily prudent person would exercise under the same circumstances so as not to injure them; such exercise of reasonable care requiring, among other things, that the motorist make certain that pedestrians in front of him are aware of the car's approach, that the car is at such distance from the pedestrian as to avoid running over him in a possible sudden panic on discovering his approach, and that the car is under such control that it may be promptly stopped, and, where the driver sees a pedestrian in peril, he must take all reasonable measures to avoid running him down, as it is itself evidence of negligence to run down a pedestrian who is in full view and does not suddenly change his course."

We find the rule clearly stated in Cooper v. Agee, 222 Ala. 334, 132 So. 173, where it was said: "The motorist must exercise *due care to anticipate* the presence of others upon the highway and not to injure him after he is aware of his presence. 1 Berry on Auto. §§ 337, 339; 42 C.J. 909; 2 R.C.L. 1184 (The two words *due care* qualify all that was said). He is chargeable with knowledge of what a prudent and vigilant operator would have seen, and is negligent if he fails to discover a vehicle which, or a traveler whom, he could have discovered in time to avoid the injury in the exercise of reasonable care. 42 C.J. 911. * * *" [Parenthesis and Italics supplied.]

Inasmuch as the case must be reversed for the giving of the charges noted above, we deem it unnecessary to discuss or treat the ruling on the motion for a new trial.

For the errors noted the judgment of the circuit court will be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.