Michael Reeves appeals from a summary judgment in favor of William King in an action for negligent entrustment. We affirm.
This is the second case appealed to this Court involving a negligent entrustment action against Mr. King. In the first appeal (involving another plaintiff), we affirmed summary judgment in favor of Mr. King, finding an absence of admissible evidence indicating that Mr. King's son, Christopher King ("Chris"), as the entrustee, was incompetent and that Mr. King knew, or by the exercise of reasonable care, should have known that Chris was incompetent and therefore should not have been entrusted with a dangerous instrument such as a handgun. Dunaway v. King,510 So.2d 543 (Ala. 1987). The facts recited in Dunaway
are equally applicable to the instant case, and for this reason we quote them in toto:
 "On Thanksgiving night of 1984 at approximately 11:00 p.m., Chris, after having been at a nightclub with a friend for several hours, went to his home and obtained his father's truck. Mr. King was asleep at the time. Chris and his friend drove to another nightclub, where an altercation occurred between Chris and Dwight Reeves. Reeves and . . . Dunaway left the nightclub and were followed by Chris and his friend, who were in Mr. King's truck. Chris, using a handgun that had been placed in the truck for a hunting trip earlier that day, fired several shots into Dunaway's vehicle. One bullet struck and killed Reeves. . . . Chris was convicted of murder and sentenced to 20 years in prison."
510 So.2d at 544.
On October 17, 1986, Michael Reeves, administrator of the estate of Dwight Reeves, instituted a suit for negligent entrustment against Mr. King and others. The trial court granted summary judgment in favor of Mr. King and made the judgment final pursuant to Rule 54(b), Ala.R.Civ.P. Reeves appeals as to Mr. King. We affirm.
 "The essential ingredients of a cause of action for negligent entrustment are: (1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) [negligent or wanton use of the entrusted vehicle which proximately caused the plaintiff's damages]; and (5) damages. Mason v. New, 475 So.2d 854, 856 (Ala. 1985); Cooter v. State Farm Fire Casualty Co., 344 So.2d 496, 498
(Ala. 1977). This Court has recognized that a cause of action for negligent entrustment is not restricted to automobiles, but may include the entrustment of vehicles, boats, firearms, or explosives. Wilbanks v. Brazil, 425 So.2d 1123, 1125 (Ala. 1983); Brown v. Vanity Fair Mills, Inc., 291 Ala. 80, 277 So.2d 893
(1973). The elements of a cause of action for negligent entrustment of an automobile and negligent entrustment of a firearm, therefore, are the same. *Page 1109 
 "It is the primary negligence of the entrustor in providing a motor vehicle or other dangerous instrumentality to an incompetent person which forms the basis of this cause of action. It is therefore essential that the plaintiff prove that the entrustee was incompetent; i.e., that he is 'likely because of his youth, inexperience, or otherwise to use [a chattel] in a manner involving unreasonable risk of physical harm to himself and others.' Mason, supra. Not only must the plaintiff prove that the entrustee was incompetent, but the plaintiff must also establish that the defendant knew, or by the exercise of reasonable care, would have known that the entrustee was incompetent. Cooter, supra."
Dunaway, 510 So.2d at 545-46.
Mr. King supported his motion for summary judgment with affidavits and depositions and, by doing so, made a prima facie showing that there was no genuine issue of material fact and that he was entitled to a judgment as a matter of law. The burden then shifted to Reeves to show, through admissible evidence, that a genuine issue of material fact existed.
 "Evidence offered in response to a motion for summary judgment, in the form of affidavits or otherwise, must present facts which would be admissible at trial. Whatley v. Cardinal Pest Control, 388 So.2d 529 (Ala. 1980).
 " 'To prevent summary judgment, after the movant has prima facie shown himself to be entitled to judgment as a matter of law, the opposing party must show by admissible
evidence that a genuine issue of material fact exists which requires resolution by a factfinder. Alabama Rules of Civil Procedure, Rule 56(e). It is not enough that the opposing party merely disputes or refutes an immaterial fact, nor is it enough that evidence which is inadmissible under the normal rules of evidence is advanced to contravene that of the movant. Real Coal, Inc. v. Thompson Tractor Co., 379 So.2d 1249 (Ala. 1980); Morris v. Morris, 366 So.2d 676 (Ala. 1978); Federal Land Bank of New Orleans v. Terra Resources, Inc., 373 So.2d 314 (Ala. 1979)'
 Horner v. First National Bank of Mobile, 473 So.2d 1025, 1027 (Ala. 1985)."
Dunaway, 510 So.2d at 544-45. (Emphasis added inHorner.)
Reeves presented two pieces of evidence, a pre-sentence report prepared by the Alabama Board of Pardons and Paroles and the affidavit of Thomas Steele, as tending to show Mr. King's knowledge of his son's violent propensities. Mr. Steele stated that, on July 30, 1983, he had an altercation with Chris during which Chris struck him in the face, causing him to suffer injuries. Mr. Steele further stated that he had told Mr. King of the altercation. The affidavit does not indicate whether Chris used or displayed a gun during the altercation. In view of our decision in Dunaway, this affidavit does not constitute sufficient evidence to establish negligent entrustment. Again, we quote fromDunaway:
 "Dunaway attempts to imply that William King knew or should have known of his son's alleged 'violent propensities.' However, Mr. King's deposition reveals that he was aware of only one altercation in which Chris was involved prior to his present offense. Mr. King testified that a gun was not involved in that incident and that Chris was not driving a vehicle at the time. It was his understanding from discussing this incident with other people present that 'the other man jumped on Chris first.' His knowledge of this one incident which did not involve a gun or a vehicle surely does not constitute knowledge of 'violent propensities' exhibited by Chris so as to impose liability upon him for negligent entrustment of a handgun or a vehicle to his 20-year-old son."
510 So.2d at 546. (Emphasis added.)
Reeves also introduced the pre-sentence report as evidence indicating Chris's violent temperament, his proclivity toward starting fights, and Mr. King's knowledge of prior altercations. Reeves authenticated the report and properly laid the foundation for its admissibility, showing that the maker of the report, a state probation and parole *Page 1110 
officer, prepared it in the regular course of business and that it was the regular course of business to make such a report at the time of the event noted or within a reasonable time thereafter. Rule 44(h), Ala.R.Civ.P.
The parole officer did not base the report upon information she had obtained through personal observation. Instead, she relied on various sources to supply her with the necessary information concerning Chris's criminal record. Consequently, the pre-sentence record contains "double" and "triple hearsay" statements. For instance, the record refers to police reports that incorporate statements of witnesses who had been in prior fights with Chris. The record also contains statements by third parties who relate incidents about Chris's past altercations. Clearly, the presentence report is not based entirely upon the personal knowledge of the maker, the parole officer. Reeves argues that the pre-sentence report should have been admitted into evidence as proof of Chris's incompetence. In support of his position he citesEx parte Frith, 526 So.2d 880 (Ala. 1988), for the proposition that "once the requisite foundation is laid it is believed that the information contained in the record is sufficiently reliable to warrant the court or jury's consideration as to the truth of the recorded information." But, this cannot be interpreted to mean that the business records exception operates like an umbrella, shielding all statements embodied in the record from the hearsay rule. Annot., 77 A.L.R.3d 115 § 8 (1977). A proper foundation must be laid for all statements contained in the business record, not just the maker's, for the truth of the matter asserted therein to be considered. A declarant's statement must have been made pursuant to a routine business duty in order for it to be excluded from the hearsay rule.
However, Rule 44(h), which is based upon the Federal Business Records Act, after providing that the record must be made in the regular course of business, states: "The circumstances of the making of such writing or record,including lack of personal knowledge by the entrant ormaker . . . may be shown to affect its weight but they shallnot affect its admissibility." (Emphasis added.) This language does not mean that the maker's lack of personal knowledge concerning third-party statements made without first-hand knowledge and not pursuant to a routine business duty has no affect on the record's admissibility. Rather, it means that the maker's lack of personal knowledge of facts that a third party observed pursuant to a routinebusiness duty and then furnished to the makerpursuant to a routine business duty and which the maker records in the record pursuant to a routinebusiness duty, goes to the weight of the record only. While Rule 44(h) does not require the maker to have personal knowledge, statements contained in a business record must be based upon the personal knowledge of someone who had a routine business duty to obtain and transmit such knowledge in order for them to be admissible to prove the truth of the matter asserted therein. McCormick on Evidence, § 310 (2d ed. 1972).
This interpretation finds support in the leading case ofYates v. Bair Transport, Inc., 249 F. Supp. 681
(S.D.N.Y. 1965), in which the court construed almost identical language in the Federal Business Records Act[1]
as applying solely to the recorder of the document. Like the instant case, Yates involved the admissibility of a record that contained information supplied by a third party. BecauseYates is clearly analogous to the instant case and provides a reasonable and logical interpretation of the language of the business records exception pertaining to the personal knowledge of the maker, we quote extensively from that opinion:
 " 'Where, however, the informant to the entrant of the record is under no duty to anyone to make a truthful account *Page 1111 
of the facts thus recorded, the record will not be admissible as proof of such facts. Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517 (Ct.App. 1930) (report of policemen as to accident based on information from bystander witness; decided under Model Act; leading case). Aside from Wigmore [5 Wigmore, Evidence § 1530a (3d ed. 1940)], no competent authority in the field and few courts have dissented from this qualification obviously basic to the rationale of the business entry exception [citing cases and law review articles].' Fagan v. City of Newark, 78 N.J. Super. 294, 188 A.2d 427, 440 (App.Div. 1963).
". . .
 " 'The majority of courts * * * have followed the rule of Johnson v. Lutz in excluding records, even though the entrant was acting pursuant to business duty, where the informants were not. This limitation has elicited severe criticism from Professor Wigmore and other commentators. They have argued that since the statute expressly rejects the necessity for personal knowledge on the part of the entrant, the only requirements for admissibility are that the entrant be acting in the regular course of his business and that the record be made at or near the time of the event. Some courts have seemingly adopted this view, admitting records regularly made although the information contained was derived ultimately from volunteers.
 " 'Despite criticism of the Johnson case, the limitation it imposes seems sound and in accord with the basic philosophy of the business entry statutes. These acts were intended to make admissible records which, because made pursuant to a regular business duty, are presumed to be reliable. The mere fact that recordation of third party statements is routine, taken apart from the source of the information recorded, imports no guaranty of the truth of the statements themselves. There is no reason for supposing an intention to make admissible hearsay of this sort. So to construe these statutes would make of them almost limitless dragnets for the introduction of random, irresponsible testimony beyond the reach of the usual tests for accuracy. Johnson v. Lutz did not ignore the statutory language making personal knowledge unnecessary, but merely emphasized that the presumption of reliability attaches only to statements made entirely in the course of business.
 " 'A record which contains the hearsay statements of volunteers [be they bystanders or participants under no duty to impart the information] then, does not by operation of the business record statutes become admissible to prove the truth of those statements.' Note, Revised Business Entry Statutes: Theory 
Practice, 48 Colum.L. Rev. 926-27 (1948).
 "The following reconciliation between the statutory language and the clear weight of authority appears correct:
 " 'This [the statutory language stating that lack of personal knowledge of the maker or entrant goes to weight rather than admissibility] could be interpreted as abolishing the requirement of firsthand knowledge by one whose job is to know the facts. The more reasonable interpretation, however, is to read "entrant or maker" as meaning the recorder only and thus merely making clear that one who makes the record on reports of others need not know the facts without broadening (beyond the probable intent of the drafters) the content of this hearsay exception to embrace records founded on reports by one who has no business duty to know the facts.' McCormick, supra, § 286 at 602.
 "Or, as stated in Standard Oil Co. of Calif. v. Moore, 251 F.2d 188, 214 (9th Cir. 1957), cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958): 'But where the entrant or maker records information supplied by others, it must appear that "it was part of their regular course of business to report to him what *Page 1112 
the declarants themselves knew, as it was part of his business to record what they said." United States v. Grayson, 2 Cir., 166 F.2d 863, 869. Where the information comes to the entrant or maker from unauthorized persons, the memorandum or record is therefore inadmissible, not because it contains hearsay, but because it was not made in the regular course of business.'
 "Moreover, if the policeman testified in court, his testimony that a bystander told him that the accident occurred thusly would be hearsay and if not within one of the exceptions, inadmissible. Why a different result should be reached where the policeman writes what the bystander said instead of testifying to it, is not readily apparent.
 "Nor are any of the cases cited by plaintiff to the contrary.
 "In analyzing these cases, however, it must be borne in mind that there are numerous exceptions to the hearsay rule and that an utterance, while not properly admitted under one exception, may very well be admitted under another.
 " 'It should be recognized, of course, that apart from the business entry statutes there are numerous exceptions to the hearsay rule — e.g., those covering statements regarding present mental or physical conditions, admission, declarations against interest, spontaneous declarations, statements or dying declarations. A record of volunteer hearsay may be admissible as proof of the facts stated where such an exception exists. Many cases which have loosely applied the business entry statutes to admit records to prove the truth of volunteer statements may well have reached a correct result on this ground. They have failed, however, to recognize explicitly that the statutes are applicable only in admitting the first step of hearsay, while the second step is admitted because a further exception wholly independent of business rules is appropriate.' 48 Colum.L.Rev. at 928-29. See McCormick, Evidence § 286 at 603 n. 12 (1954); McCormick, Hearsay, 10 Rutgers L.Rev. 620, 629, 630 (1956).
". . .
 "Based on the foregoing authorities, it appears that the Business Records Act overcomes the initial hurdle to the admissibility of evidence, but goes no further. Thus the hearsay statement (of a volunteer) contained in the police officer's report is no more admissible than the testimony of the police officer on the stand as to the hearsay statement made at the scene of the accident. If the making of the statement itself is relevant, it can be proved both by the report, which is a record kept in the ordinary course of business, as well as by the in-Court testimony of the officer. However, if the report is offered to prove the truth of the statement contained therein, the statement must either have been made in the regular course of business of the person making it, or must have an independent ground of admissibility such as an admission, etc., the same as the in-Court testimony of the officer as to the statements made, offered to prove the truth of what was said, must have an independent ground of admissibility, since all that can be shown under the Business Records Act is that in the regular course of business of the officer he wrote that X made the following statement to prove the truth of the fact that X made the statement, not the proof of the facts contained in the statement.
 "Accordingly, without knowing who made the statements and under what circumstances they were made, an insufficient foundation has presently been laid upon which to admit the proffered report over objection."
249 F. Supp. at 683-88.
The reasoning in Yates is consistent with our own precedent. In Mitchell v. City of Mobile, 244 Ala. 442, 13 So.2d 664 (1943), an absence of personal knowledge on the part of the maker did not affect the admissibility of ledger sheets containing entries of water and sewer charges that were tendered to prove the amount due for water and sewer service. The maker of the ledger sheet based his report on the reports of *Page 1113 
meter-readers. At trial, he provided the preliminary proof for the introduction of the ledger sheets into evidence, but also disclaimed any personal knowledge of the accuracy of the reports of the meter-readers. The Court found the ledger sheets to be admissible under Code of 1940, (Recomp. 1958), Title 7, § 415, which is the predecessor to Rule 44(h).
The Mitchell decision is consistent with the policy behind the business records exception and with Rule 44(h). The maker of the ledger sheet recorded the charges pursuant to a business duty and, in turn, the meter-reader who supplied the necessary information to him acted pursuant to a business duty. The meter-reader obviously had first-hand knowledge. Thus, the record contained the necessary degree of trustworthiness to exclude it from the operation of the hearsay rule.
Likewise, in Meriwether v. Crown Investment Corp.,289 Ala. 504, 268 So.2d 780 (1972), we upheld the admissibility of the official record of Crown's corporate minutes despite the fact that the corporate secretary, the maker of the record, lacked personal knowledge of entries made prior to his tenure:
 "True, the corporate record book must be properly identified and sufficiently authenticated in order to lay a preliminary foundation for its admission into evidence. We think that this was done. The book was identified by the corporate secretary as being the official record of the minutes of the meetings of the corporation which was delivered to him as such when he became secretary by George Meriwether, one of the directors, and he testified that as secretary he accepted the book as the official minute book of Crown. There was testimony also, on direct and voir dire examination, that the signatures of the corporate officers, who signed the corporate minutes contained in the book, were familiar to the witness and were recognized by him as being the signatures of those corporate officers who purportedly signed the minutes. After he became corporate secretary the witness further testified that he kept the same minute book as such, and as such officer he entered the corporate minutes therein in the regular course of the corporate business, it being the regular course of the corporate business to make such record at the time of the event or act recorded, or soon thereafter. In our opinion, this testimony was sufficient to show that the tendered book was a record of original entry, made in the regular course of the corporate business and that it was the regular course of the business to make such record at the time of the act, transaction, occurrence, or event recorded, or within a reasonable time thereafter. The lack of personal knowledge by the entrant or maker may be shown to affect the weight of the admitted record, but after the foundation is laid as outlined, the lack of personal knowledge does not affect its admissibility. The phrase 'lack of personal knowledge' in the statute, Tit. 7, § 415, Code of Alabama, Recompiled 1958, has been held to mean lack of personal knowledge on the part of the entrant as to the truth of the matter stated in the entry. Mitchell v. City of Mobile, 244 Ala. 442, 13 So.2d 664; Mahone v. Birmingham Electric Co., 261 Ala. 132, 73 So.2d 378 [(1954)]; Law of Evidence in Alabama, McElroy, 2d Ed., Vol. 2, § 254.01(4), p. 255."
Meriwether, 289 Ala. at 509-10, 268 So.2d at 784-85.
This can not be construed to mean that every statement contained in a business record falling outside the scope of the maker's personal knowledge can be used to prove the truth of the matter asserted and that the lack of personal knowledge on the part of a third-party informant as well as on the part of a maker presents only a credibility issue. The logical meaning of Meriwether and Mitchell
is that, when an appropriate witness testifies that a statement, which derives from a declarant's first-hand knowledge, in an authenticated business record was made and transmitted to the maker pursuant to a routine business duty, then the record can be introduced to prove the truth asserted in the statement and the maker's lack of personal knowledge of the facts recorded presents an issue of credibility only. The Meriwether court concluded that the entire record *Page 1114 
was made pursuant to a business duty; thus, even the entries made by the former secretary could be used to prove the truth of the matter asserted therein. The current secretary's lack of personal knowledge of those entries did not affect their admissibility, since they were made by a former secretary whose duty it was to know the facts recorded.
Moreover, for the same reasons, police reports are generally inadmissible to prove the truth of the matter asserted therein:
 "Ordinarily, the reports of investigating officers are not admissible in evidence. Nettles v. Bishop, 289 Ala. 100, 266 So.2d 260 (1972); and Vest v. Gay, 275 Ala. 286, 154 So.2d 297 (1963). See also § 32-10-11, Ala. Code 1975. They are deemed hearsay and do not fall within the 'business records' exception to that exclusionary rule. Pike Taxi Co. v. Patterson, 258 Ala. 508, 63 So.2d 599 (1952). Therefore, to be admissible, that portion of the report sought to be introduced must come within the ambit of some other exception to the hearsay rule."
Dennis v. Scarborough, 360 So.2d 278 (Ala. 1978). The accepted rationale for excluding police reports from the operation of the business records exception is that the statements of bystanders that police officers incorporate within the record are typically not made pursuant to a routine business duty. Annot., 77 A.L.R. 115, supra. Arguably, under Rule 44(h), a police report containing a bystander's statement made pursuant to a routine business duty could be introduced as evidence of the truth of the matters asserted therein, and the police officer's lack of personal knowledge would affect only its weight.
For the foregoing reasons, we hold that the trial court did not err in granting summary judgment for Mr. King. The relevant and material portions of the pre-sentence report were inadmissible for the purpose of proving their truth, i.e., that Chris had a violent temperament and that Mr. King knew this. There was no evidence indicating that the third parties who supplied the parole officer with the critical facts had observed these facts as part of a routine business duty and in turn furnished these facts as part of a routine business duty. No such predicate was laid. Clearly, if the parole officer testified at trial as to what third parties had told her about Chris or as to what third parties had told her about what another party had told them, an exclusion of such testimony under the hearsay rule to prove the truth of the matter asserted therein would have been proper, unless an independent ground of admissibility existed. The predicate that Reeves laid allows him to use the pre-sentence report only to show that the third parties made such statements. Rule 44(h) does not afford litigants a carte blanche
for the automatic introduction of everything contained in a business record. Only when a manifest degree of reliability and trustworthiness imbues a hearsay statement embodied within a business record should such a statement be admissible under the business records exception. We hold that statements by third parties that are recorded in a business record lack the requisite indicia of trustworthiness in the absence of proof establishing that they were made in the regular course of business and that it was a routine part of the business to record such statements.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.
[1] The Federal Business Records Act, 28 U.S.C. § 1732
(Supp. 1964), in pertinent part, provides:
 "All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility."