These cases arose out of a motor vehicle collision between a truck driven by John Carl Pejakovich and a 1986 Pontiac Trans-Am automobile driven by Gerald Murray. Connie Denise Hood was a passenger in the Murray car at the time of the collision. The cases were consolidated for trial and for this appeal.
The collision occurred on Ford Road in Muscle Shoals, Alabama, on a clear, dry day in an area where there were no obstructions to visibility for at least 493 feet. Ford Road is a four-lane road with two lanes for northbound traffic and two lanes for southbound traffic. The speed limit is 45 miles per hour. On the west side of Ford Road in the vicinity of the point of collision were commercial and industrial establishments. At approximately 7:00 a.m. on January 24, 1987, Pejakovich was traveling north on Ford Road and turned left across the southbound lane and the front quarter panel of his truck was hit by the automobile driven by Murray, which was in the right (westernmost) lane for southbound traffic.
Pejakovich testified that in preparation for his left turn into the driveway of his employer (Dieco Corporation) he moved *Page 77 
from the right northbound lane into the left northbound lane and began to slow his vehicle. He testified that he saw no oncoming traffic in the southbound lanes and turned left across the southbound lanes of Ford Road towards the Dieco driveway. Pejakovich's left turn signal was turned on.
Allen Perlman, an expert witness called by Pejakovich, testified that in his opinion, the speed of Murray's vehicle at the onset of the skidding was approximately 85 miles per hour; and that at the point of impact, the speed was approximately 67 miles per hour. Perlman testified that the point of impact occurred approximately 1.5 seconds after Pejakovich crossed the center line of Ford Road. Perlman further testified that Murray's vehicle should have been visible to Pejakovich before he turned across the southbound lanes, because it would have been 300 feet from the point of impact at the time Pejakovich committed to make the turn and would have been 200 feet from that point when Pejakovich began his turn. He testified as follows:
 "Q. Now let me back up a minute and we will come back to this — what we agree on is this roadway and the way that Mr. Pejakovich was going is flat and open, relatively, correct?
"A. Relatively flat and open, yes.
 "Q. And he could see from where he was making his turn to River Road, any vehicle on it?
 "A. That would depend on how good his vision is; there are no obstructions or curves or hills on the road between there and the next intersection.
 "Q. And when you come out of this dip 493 feet of a flat clear open space, right?
"A. Yes, sir.
"Q. And there's nothing to obstruct his vision?
"A. That's correct." (Emphasis supplied.)
Officer Roger Balentine, a witness called by Pejakovich, testified that while there was a slight dip in the road 493 feet north of the Dieco driveway, a person traveling in the direction that Pejakovich was traveling could see traffic on the road for a mile from the place that he made the left turn:
 "Q. But a vehicle traveling down the road looking in that direction could see cars and a pickup truck — someone sitting in a pickup truck could see cars the whole distance, all the way up Ford Road?
"A. Yes, sir.
"Q. I mean to River Road?
"A. Yes, sir.
"Q. How far is that?
"A. It would be approximately a mile."
Murray testified that he first noticed a truck in the inside lane of oncoming traffic when it was approximately 500 to 600 feet away. He stated that the truck "bobbled" across the center line twice before turning across the southbound lane in front of him. At that time, Murray said, he was driving in the far right, or outside, lane of traffic. Murray further testified that, at the time of the wreck, he did not know how fast he was going, but that he was going over 40 m.p.h. but not over 80 m.p.h. Ms. Hood also testified that she did not know how fast Murray was driving and that she saw the truck being driven by Pejakovich "bobble" across the center line before turning in front of them.
A video tape and pictures of Pejakovich's and Murray's view of the scene were introduced into evidence, and this Court has studied them. From these, we find that all or substantially all of Murray's vehicle could be seen by a person in Pejakovich's position before he made his left turn; and that all or substantially all of Pejakovich's vehicle could have been seen by a person in Murray's position in time to reduce his speed so that the vehicle could have been stopped in the event the Pejakovich vehicle made a left turn.
Ms. Hood sued Pejakovich and his employer, Dieco Corporation ("Dieco"), and Murray and his employer, Factory Outlet Mobile Home Sales, Inc. ("Factory Outlet"), claiming that they had negligently and wantonly injured her. The trial court, at Ms. Hood's request, directed a verdict against Pejakovich and Dieco, on the negligence count and the jury returned a $200,000 verdict for Ms. Hood on that count. *Page 78 
The trial court directed a verdict in favor of Pejakovich and Dieco on Ms. Hood's wantonness count. The wantonness count is not before us.
The trial court, at the request of Murray and Factory Outlet, directed a verdict in their favor on Ms. Hood's negligence and wantonness claims against them.
Pejakovich sued Murray and Factory Outlet, claiming that they had negligently and wantonly injured him.[1] At Murray's request, the trial court directed a verdict in favor of Murray and Factory Outlet on Pejakovich's negligence and wantonness claims.
Murray filed a counterclaim against Pejakovich and Dieco, claiming that they had negligently and wantonly injured him. The trial court directed a verdict, at Pejakovich's and Dieco's request, in their favor on Murray's wantonness claim. The jury found Murray guilty of contributory negligence, and returned a verdict in favor of Pejakovich and Dieco on Murray's negligence claim.
Pejakovich, Ms. Hood, and Murray appeal. In accordance with Rule 28(a)(3), A.R.App.P.,[2] Pejakovich presents the following as his first issue for review:
"I. Whether the trial court erred in granting a directed verdict in favor of plaintiff Connie Denise Hood on her claim that plaintiff/defendant John Carl Pejakovich was guilty of negligence."
These actions were filed prior to June 11, 1987; therefore, Alabama Code 1975, § 12-21-12, does not apply, and the applicable standard of review is the "scintilla rule." Kizziahv. Golden Rule Insurance Co., 536 So.2d 943 (Ala. 1988).
In Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 856 (Ala. 1981), this Court stated the standard of review for a directed verdict, using the scintilla of evidence rule, as follows:
 "A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214
(Ala. 1978). . . .
 "In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975); Vintage Enterprises, Inc. v. Cash, 348 So.2d 476 (Ala. 1977)."
See also, Ritch v. Waldrop, 428 So.2d 1 (Ala. 1982), and Patev. Sunset Funeral Home, 465 So.2d 347 (Ala. 1984).
Did the trial court err in directing a verdict in Ms. Hood's favor on her negligence claim against John Pejakovich?
The rule of the road in Alabama governing a left turn is set out in Ala. Code 1975, § 32-5A-111:
 "The driver of a vehicle intending to turn to the left within an intersection into an alley, private road or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."
A motorist is negligent if he fails to discover a vehicle that he could have discovered in time to avoid injury.Brown v. Billy Marlar Chevrolet, Inc., 381 So.2d 191 (Ala. 1980); Pike Taxi Co. v. Patterson, 258 Ala. 508, 63 So.2d 599
(1953). All of the testimony was that Murray's vehicle was close enough to constitute an immediate hazard and could have been discovered by Pejakovich in time to avoid injury. If Pejakovich failed to see what was there to be seen, he was negligent.
Pejakovich testified that he did not see the Murray vehicle before he turned left. The undisputed testimony is that Pejakovich *Page 79 
could have seen the vehicle if he had maintained a proper lookout.
There was no error in the trial court's directing a verdict in favor of Ms. Hood on the issue of Pejakovich's negligence.
Pejakovich's second issue for review, and Ms. Hood's sole issue for review, is whether the trial court erred in granting a directed verdict in favor of Murray and Factory Outlet on Pejakovich's and Ms. Hood's claims against them for wantonness.
Wantonness is most often defined by this Court as "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." McDougle v. Shaddrix, 534 So.2d 228, 231
(Ala. 1988).[3]
There was testimony that Murray was traveling at an excessive rate of speed, as high as 85 m.p.h., in a 45 m.p.h. zone. There was no evidence that Murray slowed his speed upon twice seeing Pejakovich's truck "bobble" into Murray's lane. Pejakovich's left turn signal was on. Murray continued at an excessive rate of speed until Pejakovich actually turned in front of Murray's vehicle. Furthermore, the evidence shows that Murray knew that there were commercial and industrial establishments west of Ford Road and that he was aware that there was an intersecting access road at the place where the wreck occurred. The evidence would support a finding that Murray consciously drove at an excessive speed even after he was aware that a truck was likely to turn in front of him. From this, the trier of fact could reasonably infer that Murray knew that injury was likely to result to his own passenger and to the driver of the truck, if that driver should turn.
The trial court erred in directing a verdict for Murray and Factory Outlet on Pejakovich's and Ms. Hood's wantonness claims against them.
Murray's first issue for review is whether the trial court erred in directing a verdict in favor of Pejakovich and Dieco on Murray's wantonness claim against them.
Pejakovich testified that he never saw Murray's vehicle before he started his turn across the southbound lanes of Ford Road. Pejakovich's own expert witness and all other witnesses testified that from Pejakovich's perspective the Murray vehicle should have been visible before Pejakovich started his turn. The video tape and photographs of the area clearly show that Murray's vehicle should have been visible to Pejakovich before he made his left turn. There was evidence that, before the left turn was actually made, the Pejakovich vehicle twice went across the center line, as if its driver were planning to turn left. The trier of fact could reasonably infer from this that Pejakovich was aware of the approaching vehicle but opted to disregard oncoming traffic. There having been no obstructions, and visibility having been good at the time, Pejakovich's operation of his vehicle could reasonably be viewed as having been done with consciousness that the doing of the act (executing the left turn) or omitting to act (failing to yield the right-of-way to a vehicle approaching from the opposite direction) would likely result in injury to another. SeeCollins v. Shelley, 514 So.2d 1358, 1361 (Ala. 1987).
The trial court erred in directing a verdict in favor of Pejakovich and Dieco on Murray's wantonness claim against them.
After the trial court directed a verdict in favor of Murray on Ms. Hood's wantonness claim, the jury returned a $200,000 verdict for compensatory damages in favor of Ms. Hood against Pejakovich and Dieco on a negligence claim. Murray doesnot contend that, because Pejakovich, Dieco, and Murray were joint tort-feasors and there is no contribution among joint tort-feasors in Alabama, the recovery of a judgment by Ms. Hood against Pejakovich and Dieco for compensatory damages *Page 80 
precludes any recovery by Ms. Hood against Murray for punitive damages. Murray does contend that Ms. Hood's judgment has been satisfied, and he points out that when a plaintiff recovers a judgment against one tort-feasor and obtains satisfaction of that judgment, this operates as a discharge of the other joint tortfeasor. Williams v. Colquett, 272 Ala. 577, 133 So.2d 364
(1961). Nothing in the record, and certainly nothing in the briefs filed by Pejakovich, indicates that Ms. Hood's judgment has been satisfied. If in fact Ms. Hood's judgment for compensatory damages has been satisfied, as can be determined by the trial court, then Ms. Hood's claim against Murray should be limited to such punitive damages, if any, as the jury may assess against Murray, if the jury finds that Murray wantonly injured Ms. Hood; and the jury should be so instructed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] Pejakovich's wife sued Murray for loss of consortium. This claim will be included in our discussion of Pejakovich's claim.
[2] "Assignments of error are not required. Statement of the issues presented on appeal in the appellant's brief as required by Rule 28 shall be sufficient." Rule 20, A.R.App.P.
[3] In Lynn Strickland Sales Service, Inc. v. Aero-LaneFabricators, Inc., 510 So.2d 142, 146 (Ala. 1987), we used the words "premeditation" and "formed intention" to define wantonness. However, in doing so, we did not mean to require proof of more than this readopted definition of wantonness inMcDougle v. Shaddrix.