[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 615 
This is an appeal from the revocation of a license to operate a child-care facility.
In May 1988, the Department of Human Resources (DHR) issued to Kid's Stuff Learning Center, Inc. (KSLC), a license to operate a day-care facility. Two years later, DHR notified KSLC of its intent to revoke the license because of what it called KSLC's *Page 616 
"consistent fail[ure] to maintain standards prescribed and published by the department." See Ala. Code 1975, § 38-7-8(1). By letter of June 26, 1990, DHR notified KSLC of 92 specific instances of noncompliance with DHR standards in the following areas: child/staff ratios and grouping of children; staff supervision of children; feeding programs; transportation, equipment, sanitation, reporting, and record-keeping requirements; and character and suitability criteria.
After a lengthy pre-revocation hearing, during which testimony was taken for 10 days between July 30, 1990, and November 15, 1990, the hearing officer entered an order revoking KSLC's license. Within 14 days of that order, KSLC requested a fair hearing pursuant to Ala. Code 1975, § 38-7-9. The fair hearing officer conducted a record review of the pre-revocation proceeding and concluded that the decision of the pre-revocation hearing officer was supported by substantial evidence and was not arbitrary or capricious.
KSLC filed a complaint in the circuit court for judicial review of the administrative proceedings. See Ala. Code 1975, § 38-7-9. The circuit court affirmed the decision of the hearing officer.
On appeal, KSLC maintains that the decision to revoke its license was arbitrary, capricious, and unsupported by the evidence. KSLC argues that the hearing officer relied on hearsay in reaching his decision. KSLC also contends that it was denied substantive due process because, it argues, the regulations it was charged with violating are unconstitutionally vague and overbroad. In addition, KSLC argues that it was denied procedural due process because, it says, DHR failed to follow its own rules regarding the license revocation.
This court reviews the trial court's ruling with no presumption of correctness, "since that court was in no better position to review the order of [the hearing officer] than we are." State Health Planning Resource DevelopmentAdministration v. Rivendell of Alabama, Inc., 469 So.2d 613,614 (Ala.Civ.App. 1985). Our standard of review of the agency decision is the same as that used by the circuit court: whether the administrative factfinder's decision "was illegal, capricious, or unsupported by the evidence." Ala. Code 1975, §38-7-9. See Delavan v. Board of Dental Examiners, 620 So.2d 13
(Ala.Civ.App. 1992).
 Evidentiary Issues
KSLC argues that the hearing officer's decision was arbitrary and unsupported by the evidence because he relied on incidents that occurred before May 1988, when DHR issued KSLC's license. KSLC contends that Ala. Code 1975, § 38-7-4, prohibits the consideration of any prelicense violations of DHR standards. Section 38-7-4 provides:
 "If, upon . . . examination of the facility and investigation of the persons responsible for care of children, the department is satisfied that the facility and the responsible persons reasonably meet standards prescribed for the type of child-care facility for which application is made, the department shall issue a license. . . ."
(Emphasis added.) KSLC submits that because DHR must be satisfied that a child-care facility meets DHR standards when it issues a license, DHR is estopped from later using against the licensee any incidents of noncompliance that occurred before the license was issued. The hearing officer considered that argument, but concluded:
 "This argument ignores the fact that the vast majority of DHR charges in this case are based on the consistent failure to maintain standards and the chronic noncompliance with child/staff ratios and lack of adequate supervision of children. . . . In order to prove chronic or consistent failures, it is the opinion of the hearing officer that DHR is not limited to periods only after the issuance of the latest license to the licensee. Additionally, this allows DHR to issue warnings or issue notices to the licensee in question, giving the opportunity to the licensee to correct the problems without the necessity of revocation of the license in question."
KSLC's prior failures to met DHR standards were relevant and admissible because they tended to show that KSLC had knowledge of the prescribed standards, yet engaged in the *Page 617 
routine practice of ignoring those standards. Evidence of routine mismanagement by a group or organization is admissible on the same theory that behavior which amounts to a habit or custom of a person is admissible. Dothard v. Cook,333 So.2d 576 (Ala. 1976). Both tend to " 'increase or diminish the probabilities of an act having been done or not done, which act is the subject of contest.' " Id. at 579 (quoting Walker v.Barron, 6 Minn. 508, 512 (1861)).
Based on the evidence before him, the hearing officer could reasonably conclude that DHR notified KSLC of certain deficiencies before issuing KSLC a license in May 1988, and that KSLC had remedied those deficiencies before receiving a license. Evidence of KSLC's prelicense deficiencies was, therefore, admissible to show that KSLC had specific notice of its deviation from minimum standards. Based on that evidence, the hearing officer was authorized to find that KSLC continued a pattern and practice of deviating from those standards, i.e., that it "consistently fail[ed] to maintain standards prescribed and published by the department." Ala. Code 1975, § 38-7-8(1). The hearing officer did not err by admitting instances of KSLC's prelicense deviation from DHR standards.
KSLC maintains that principles of res judicata precluded a reconsideration of any prelicense deviations from DHR standards. We do not agree.
 "A decision rendered by an officer or a board of state or municipal officers, or a commission, when acting judicially, or quasi-judicially, and within his or its jurisdiction, and having by law the force and effect of a judgment, is a bar to further actions on the same matter between the parties or their privies, but if such an officer or board does not act judicially in the particular matter, but ministerially or administratively, . . . it is no bar to further proceedings in the same matter, and the power of an administrative body or an agency to reconsider its own findings or orders has no relation to, and is not affected by, the doctrine of res judicata. The test [is] . . . whether the particular decision was judicial in its nature and effect, and not the mechanics of the proceeding."
McMahan v. Yeilding, 270 Ala. 504, 506, 120 So.2d 429, 430-31
(1960) (quoted in Carden v. Personnel Board, 474 So.2d 1155,1156 (Ala.Civ.App. 1985)). The doctrine of res judicata applies to an agency decision only when that decision is made after a trial-type hearing, i.e., "when what the agency does resembles what a trial court does." II K. Davis R. Pierce, Jr., Administrative Law Treatise § 13.3 at 250 (3d ed. 1994). "[A]n administrative decision made without a hearing or anything resembling a hearing is not res judicata." Id. at 249. An administrative agency is acting in a judicial capacity only when it "resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." United States v. Utah Construction Mining Co.,384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).
 "A[n] . . . administrative handling of a claim, such as responding with a yes or a no to a written application is not necessarily an adjudication, even though it may involve application of law and finding or interpreting facts. Such handling may precede adjudication and may be regarded as executive or ministerial rather than as judicial."
II K. Davis R. Pierce, Jr., Administrative Law Treatise at 250. Furthermore, preclusive effect is accorded only "to those determinations of administrative bodies that have attained finality." Astoria Federal Savings Loan Ass'n v. Solimino,501 U.S. 104, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991).
DHR's decision to issue KSLC a day care license was not made after a trial-type hearing. Moreover, it is apparent that the Alabama legislature did not intend to grant "finality" to DHR's child-care licensing decisions. The first of the nine grounds listed in § 38-7-8, Ala. Code 1975, upon which DHR may "revoke or refuse to renew the license or the approval of any child-care facility" is that the licensee has "consistently
fail[ed] to maintain standards prescribed and published by the department." The legislature's use of the words "consistently" and "maintain" implies that it intended DHR to have continuing *Page 618 
supervision over a licensee, with the continued approval of the license contingent on the licensee's measuring up to prescribed standards. DHR's licensing decision was a ministerial or administrative, and not a judicial, act.
KSLC further argues that DHR acted inconsistently (and therefore arbitrarily) by issuing it a license in 1988, and then, upon reconsideration of incidents that occurred before the issuance of the license, by revoking its license in 1990. Clearly, if an agency makes inconsistent determinations, the question arises whether it has acted arbitrarily and capriciously. See Ex parte Shelby Medical Center, Inc.,564 So.2d 63 (Ala. 1990). However, in this case DHR did not make inconsistent determinations. DHR did not issue KSLC a day care license in 1988 in disregard of KSLC's deviation from DHR standards. It issued the license in reliance upon KSLC's having remedied the situation that constituted the deviation. When that reliance proved to be unfounded, and KSLC demonstrated that it was chronically deviating from DHR standards, DHR moved to revoke KSLC's license. There is no inconsistency in that course of action.
KSLC contends that the hearing officer's consideration of certain documentary evidence containing hearsay indicates that the hearing officer's decision was not supported by substantial legal evidence. Initially, we note that in a nonjury trial or hearing, an error in the admission of evidence does not authorize a reversal if the decision is sustained by other legal evidence. Alabama Board of Nursing v. Herrick,454 So.2d 1041 (Ala.Civ.App. 1984). A review of the evidence in its entirety reveals that, even without the documentary evidence in question, there is substantial legal evidence to support the factual conclusions upon which KSLC's license was revoked. Moreover, the following portion of the hearing officer's final order refutes the contention that the hearing officer considered hearsay:
 "[KSLC] has devoted much time in hearing and in brief on the question of admissibility of certain narratives of DHR as business records. Carte blanche admission of the narrative was rejected by the hearing officer since it was being offered to prove what amounted to a non-issue in the case and would serve no useful purpose to resolve the issues. DHR offered other portions of narratives for various other purposes. The hearing officer has found no real need to consider those remaining portions of narratives offered by DHR since ample evidence to support most charges was proven by live testimony.
 "Nevertheless, for purposes of establishing a proper record in this case, the hearing officer deems admitted only those portions of the remaining business narrative in accordance with the case of Reeves v. King, 534 So.2d 1107
(Ala. 1988). In accordance with Reeves, records of the following shall be deemed admitted: (1) personal observations by the DHR maker of existing conditions; (2) declarant statements made pursuant to routine business duties based on personal knowledge; or (3) statements made which are admissible as exceptions to the hearsay rule, e.g., admissions or declarations (see Reeves, supra at 1112, citing 10 Rutgers L.Rev. 620, 629, 630 (1956))."
The administrative hearing officer found that DHR had presented sufficient evidence to support a finding of 51 separate violations of DHR minimum standards for child-care facilities from September 1988 to June 1990. We have carefully reviewed the extensive record of the administrative hearing, and we conclude that there is ample evidence to support the following findings of fact by the hearing officer:
 "The licensee in this case has shown a consistent and chronic failure to maintain the minimum standards required at the times indicated. The licensee has failed to comply with adequate child/staff ratios and has failed to properly supervise the children assigned to its care.
 "It appears from the testimony in this case that the worst situations were occurring at the licensee day care center during the several months after it opened, particularly in late 1987 and the first three or four months of 1988. The situation again worsened beginning around January of 1990, until the situation quite frankly became *Page 619 
intolerable in late May of 1990. The licensee has shown a pattern of misgrouping the children according to their ages. Serious injuries were sustained by two children during times that they were grouped with children much older than themselves. Fourteen-month-old K.G. required eleven stitches to her head as a result of being pushed by an older child, and D.M. suffered partial amputation of his finger while in a room with older children when a door was closed on his finger.
 "It is apparent to the hearing officer that on many occasions the licensee has failed to hire sufficient backup staff or substitute staff to supervise the children when other teachers did not show up for work. It appears that the licensee has attempted to get by with the very least amount of teachers possible with full knowledge that some of those teachers will occasionally not show up for work resulting in over-crowded classrooms and combined classrooms where small children are mixed with older children in violation of minimum standards. Improper grouping of different ages of children also occurred in the morning and afternoon hours at Kidstuff. Apparently, in the early mornings, children would be dropped off at various times by their parents. Instead of having one teacher in each classroom for the children as they were dropped off, it apparently was the practice of Kidstuff to group children of many different ages with one teacher. This resulted in other teachers for those age groups not having to come in as early. Likewise, in the afternoon, when children started leaving at different hours, the classes would be combined of different age groups and the respective teachers for those different age groups could leave earlier than the latest [pick-up] time. . . .
 "The hearing officer considers the charges even more serious in view of the amount of experience that the licensee has. It appears in many instances that the licensee has blatantly disregarded the minimum standards applicable. It also appears in other situations that the licensee exhibited a lackadaisical attitude toward the DHR minimum standards.
". . . .
 "Although not as serious as the supervision and grouping problems, the licensee also indicated an attempt to maximize profits at the center at the expense of children in its feeding program. The licensee showed an attitude of attempting to circumvent minimum regulations where possible, which even extended to procedural irregularities such as not keeping proper records, and not notifying DHR as required by minimum standards."
DHR's decision is presumed to be prima facie just and reasonable. We may not substitute our judgment for that of the agency as to the weight of the evidence or questions of fact. Ala. Code 1975, § 41-22-20(k). See also Evers v. MedicalLicensure Comm'n, 523 So.2d 414 (Ala.Civ.App. 1987).
 Substantive Due Process Issues
KSLC argues that the DHR minimum standards relating to day care center feeding programs are unconstitutionally vague. Specifically, KSLC challenges the standard requiring that "portions of food be suitable to the child's age and appetite. Second portions shall be available."
If a statute or regulation "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application," it is void for vagueness. Connally v.General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127,70 L.Ed. 322 (1926). On the other hand, if regulatory language "provides a sufficiently definite warning so that the conduct sought to be prohibited may be ascertained or comprehended within the common meaning of words or practices, such language will not be held to be unconstitutionally vague." Delavan v.Board of Dental Examiners, 620 So.2d at 18 (quoting Board ofDental Examiners v. King, 364 So.2d 311, 316
(Ala.Civ.App. 1977), reversed on other grounds, 364 So.2d 318 (Ala.), on remand, 364 So.2d 319 (Ala.Civ.App. 1978)).
KSLC argues that the DHR standard is unconstitutionally vague because, it argues, people of common intelligence could *Page 620 
disagree about the amount of food "suitable for [a] child's age and appetite." KSLC's argument might be persuasive if not for the fact that the DHR regulation containing the phrase "suitable for the child's age and appetite" is supplemented by detailed appendices that specify the type and quantity of food required. For example, one appendix sets out the following minimum standards:
"Breakfast Children Children Children
 1-3 3-6 6-12
Milk, fluid 1/2 cup 3/4 cup 1 cup
Juice, fruit, or
vegetable 1/4 cup 1/2 cup 1/2 cup
Bread and/or cereal,
enriched or whole
grain
 Bread or 1/2 slice 1/2 slice 1 slice
 Cereal: Cold dry or 1/4 cup 1/3 cup 3/4 cup
 Hot cooked 1/4 cup 1/4 cup 1/2 cup"

The DHR regulations relating to day care center feeding programs are not unconstitutionally vague; they are clear, definite, and easily ascertainable.
KSLC insists that DHR's reporting and record-keeping requirements are also unconstitutionally vague and overbroad. Specifically, KSLC takes issue with the regulations requiring a day care facility to report to DHR a "change in ownership, directorship, or chief officership of the board," as well as "any injury requiring professional medical treatment of any child or staff person while at the Center." KSLC also challenges the requirement that a child-care facility keep "daily attendance records on staff and children."
DHR charged that KSLC violated minimum standards when it repeatedly failed to inform DHR of a change in its program director. KSLC argues that the regulation that requires reporting to DHR any change in a child-care facility's "ownership, directorship, or chief officership of the board," is vague because, KSLC says, it could be interpreted to refer to a change in the corporate board of directors, rather than to a change in the program director of a child-care center. That argument might be successful if KSLC had changed program directors only once. However, KSLC changed program directors at least three times during the licensing period and, after the first change, KSLC had actual notice that it was expected to notify DHR before it hired a new program director.
KSLC contends that DHR's injury-reporting requirements are vague and overbroad because, it says, a layman will not always know whether an injury "require[s] professional medical treatment." One who challenges a regulation as being unconstitutionally vague or overbroad must be directly affected by the statute's alleged vagueness. Kirby v. Mobile CountyComm'n, 564 So.2d 447, 450-51 (Ala.Civ.App. 1990). Here, KSLC was charged with failing to report the injury of two children who were given medical treatment; it was not forced to wonder whether the children required medical treatment. One of the children had a head injury requiring 11 stitches, and the other had a partially amputated finger. We do not think any great expertise is necessary in order to decide that such injuries "require[d] professional medical treatment." Therefore, even if the regulation could, in some other set of circumstances, be considered vague, it was not vague as to KSLC. KSLC is not in a position to argue the vagueness or over-breadth of the regulation as it might apply to other parties, when the regulation was not vague as to KSLC. Kirby v. Mobile CountyComm'n.
KSLC argues that the regulation requiring it to keep "daily attendance records on staff and children" is vague and subject to misunderstanding because, it contends, the regulation does not specify where the records are to be kept. Subsection (4)(C)(2) of the "Minimum Standards for Day Care Centers" is entitled "Records — Filing," and provides that records "shall be maintained in the center for at least two years after the child or staff member has left the center." (Emphasis added.) The attendance regulation, when read in conjunction with the additional provision at subsection (4)(C)(2), "provides a sufficiently definite warning so that the conduct [required] may be ascertained or comprehended within the common meaning of words or practices," and it is, therefore, not unconstitutionally vague. Delavan v. Board of Dental Examiners, 620 So.2d at 18. *Page 621 
 Procedural Due Process Issues
KSLC claims that DHR denied it procedural due process in three ways. First, KSLC contends DHR violated its own regulation requiring 14 days' written notice before a hearing. Next, KSLC argues, DHR failed to give specific dates for the incidents upon which it relied in revoking KSLC's license. Finally, KSLC complains that despite the fact that DHR regulations require a decision of the fair hearing officer within 90 days of a request for a fair hearing, DHR failed even to appoint a fair hearing officer for almost one year after KSLC's request.
KSLC's argument that it did not receive adequate notice of the charges against it is based on the fact that DHR mailed an amended notice of the charges only 12 days before the hearing. The Alabama Supreme Court has held that "amendments in an administrative hearing are allowed at least to the extent they are allowed in a judicial proceeding." Goolsby v. Green,431 So.2d 955, 960 (Ala. 1983). Under Rule 15, Ala.R.Civ.P., amendments should be freely allowed if the opposing party is not prejudiced. Id. KSLC was not prejudiced by the late notice of the amended charges.
The hearing officer allowed DHR to present evidence on the amended charges, but also allowed KSLC to recall or subpoena any witnesses it deemed necessary to counter those charges. The hearing officer informed KSLC's attorney:
 "If something comes up where you are claiming lack of notice, tell me what this is and I will give you additional time to either resubpoena witnesses as to that issue or subpoena your own witnesses as to that issue after the conclusion of this hearing tomorrow, which I understand will not be the conclusion of the hearing anyway. So, if you will point that out to me at that particular issue, since I haven't seen the correspondence, point that out to me, I'll take notice of that and allow you additional opportunity to respond to that. Is that agreeable?"
The attorney for KSLC responded, "That's fine." DHR finished the presentation of its case on October 5, 1990. KSLC had from October 5 until the conclusion of the hearing on November 15, 1990, to present additional evidence relating to the amended charges. Under the circumstances, KSLC was simply not harmed by the late notice of the amended charges. As the Alabama Supreme Court observed in a similar situation, "We find no evidence in the case before us that appellant was prejudiced by the amendment of the charge." Goolsby v. Green 431 So.2d at 960. See also Delavan v. Board of Dental Examiners, 620 So.2d at 16-17.
KSLC argues that DHR violated its right to procedural due process by failing to give specific dates for some of the incidents made the basis of the charges against it. First, we note that "[i]n order to satisfy due process requirements . . ., it is not necessary that the charges be drawn with the formality and exactness required in a court proceeding."Goolsby v. Green, 431 So.2d at 959. Moreover, KSLC was not harmed by the omission of specific dates from the charges, because KSLC had six weeks, after DHR rested its case, to respond to the charges by recalling DHR witnesses or by subpoenaing its own witnesses. Compare Chafian v. Alabama Boardof Chiropractic Examiners, 647 So.2d 759 (Ala.Civ.App. 1994) ("lack of precise dates of the occurrences of the events did not deprive Chafian of due process" because he acquired, from a source other than the complaint, adequate notice and opportunity to defend).
KSLC insists that it was denied due process of law because DHR delayed appointing a fair hearing officer for almost one year following KSLC's request for a fair hearing. KSLC argues that a cloud of economic and emotional uncertainty hung over the operation of its child-care facility during that period. KSLC continued to operate the facility, however, during the pendency of the pre-revocation hearing and throughout two appeals, the fair hearing record review and the circuit court judicial review. Although the license revocation procedure in this case began on June 26, 1990, KSLC's license was not finally revoked until July 15, 1994, when its Rule 59, Ala.R.Civ.P., motion to alter, amend, or vacate the circuit court's judgment was denied by operation of law. *Page 622 
This court has held that a two-year delay in holding an administrative hearing did not amount to a denial of due process when the postponement resulted from nothing more "than the usual delays associated with fairly complex litigation" and the aggrieved person's license was not revoked during the pendency of the proceedings. See State Insurance Dep't v.Howell, 614 So.2d 1053, 1057 (Ala.Civ.App. 1992). We hold that the delay in this case was not so oppressive as to constitute a denial of due process.
We have thoroughly and carefully reviewed the record in this case, and we conclude that the evidence supports the hearing officer's findings of fact and conclusions of law. We also conclude that DHR's decision was not arbitrary or capricious and that KSLC's due process rights were not denied. Therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES and MONROE, JJ., concur. *Page 979