On Application for Rehearing
The no-opinion affirmance of this court issued on June 24, 2005, is withdrawn, and the following is substituted therefor.
Rick E. Earl appeals from a judgment of the Mobile Circuit Court (1) affirming an *Page 550 
order of the State Personnel Board ("the Personnel Board") that upheld Earl's dismissal "for cause" by the Department of Youth Services ("DYS") and (2) dismissing claims that Earl filed (in relation to his administrative appeal) against the Personnel Board; Joe N. Dickson, the Personnel Board Chairman; Rick Meadows, the Administrative Law Judge who heard Earl's administrative appeal; Thomas G. Flowers, the State Personnel Director; and the following members of the Personnel Board: Harry McMillan, John McMillan, J. Ray Warren, and Howard W. Powell. The individual defendants were all named as defendants in both their individual and official capacities. The claims against the various individual defendants are premised on Earl's contention that he was wrongfully dismissed and revolve around alleged violations of Earl's federal and state constitutional rights in conjunction with his dismissal.
Earl is a former merit-system employee of DYS. Earl began working for DYS in 1988; he was assigned to work in Mobile as a "Youth Services Aide." In August 1996, DYS informed Earl by memorandum that he was being transferred to Thomasville to work in a youth "boot camp" facility; DYS's Thomasville facility is approximately 100 miles from Mobile. Specifically, the memorandum stated:
 "This is to inform you that because you are needed at the Thomasville facility, it is necessary for me to transfer you there from your present assignment with the CPS [Community Placement and Supervision] program effective September 14, 1996. Your first work day there will be Monday September 16, 1996. . . .
 "This action is necessitated by the restructuring of the CPS program and by the fact that Thomasville has a YS Aide vacancy.
 ". . . .
 "I appreciate your willingness to serve the department where you are needed. Moreover, I appreciate the confidence of knowing that you will do a good job at Thomasville just as you have done at CPS. If you decide you want to transfer to another location next time a vacancy occurs, you may submit a written request to do so. I would be happy to consider such a request any time we have a vacancy."
Earl objected to the transfer for transportation and personal reasons.[1] Earl also argued that the transfer was a de facto demotion or a constructive discharge from employment. He requested that DYS reconsider the transfer.
DYS considered Earl's objections, but it did not alter its decision. Instead, at Earl's request, DYS twice extended Earl's reporting date to Thomasville, and it continued to offer to "work with [Ear]] to accommodate the possibility of commuting with other employees who work at Thomasville yet live in Mobile."
Thereafter, Earl continued to object to his transfer, corresponding with DYS both personally and through his attorney. However, DYS insisted that Earl report to work in Thomasville on October 7, 1996, *Page 551 
the first workday after the last extension that DYS had granted Earl.
Earl did not report to work in Thomasville on October 7, 1996, and he did not report the reason for his absence to his Thomasville supervisor. DYS informed Earl via facsimile letter to Earl's attorney dated October 7, 1996, that Earl had failed to report to work as ordered and that he must report to work as ordered on the following day. Earl's attorney responded by letter, stating that Earl could not report to work because of his hardships, that DYS was attempting to wrongfully dismiss Earl, and that DYS should not consider Earl's absence to be "unreported." The same scenario occurred on each of the following two days, i.e., October 8 and October 9. On each day Earl failed to report, DYS forwarded a letter to Earl, through his attorney, demanding that he report for work; Earl's attorney responded by letters to DYS stating that Earl could not report to work as ordered.
After Earl refused to comply with DYS's order to report to work for three consecutive days, James Dupree, the Director of DYS, sent Earl a letter dated October 10, 1996, that states:
 "You have failed to report to work for more than three consecutive days despite my letters (through your attorney) instructing you to report to work. Therefore, I am interpreting your action (or lack of action) as job abandonment tantamount to resignation, and your resignation is hereby accepted effective at the close of business on the last day of your approved leave, which was [October 4,] 1996."
Dupree forwarded a notice to the State Personnel Department (referred to as a "Form 5") recommending that it consider Earl to have resigned based on "job abandonment tantamount to resignation"; the State Personnel Director approved Dupree's recommendation. Earl's attorney sent a letter to DYS objecting to DYS's position and contending that Earl had not resigned but that he had been wrongfully dismissed. Earl did not appeal DYS's decision to the Personnel Board.[2]
In 1998, however, Earl filed a complaint in the federal District Court for the Southern District of Alabama against DYS; Walter Wood, Jr., the "current Executive Director of DYS"; Dupree, the executive director of DYS at the time of Earl's alleged resignation; and Jan Autery, the former program administrator of the Community Placement and Supervision program in Mobile. In part, Earl asserted claims against DYS, Dupree, and Autery under 42 U.S.C. § 1983, and he alleged that DYS, Dupree, and Autery, both in their official and individual capacities, had violated his right to both procedural and substantive due process under the Alabama Constitution and the United States Constitution. The claims involved numerous matters that are not pertinent to the present case, but they also included claims that DYS failed to follow appropriate pretermination and posttermination procedures in regard to Earl's alleged resignation. Earl requested monetary damages from DYS, Dupree, and Autery. Earl also *Page 552 
requested injunctive relief, as hereinafter discussed, in regard to his claims against Wood, in his official capacity.
In September 2000, the federal district court entered an order dismissing all of Earl's claims against DYS and all of Earl's claims against Dupree and Autery in their official capacities.[3] The injunctive-relief claim against Wood remained pending, as did several claims against Dupree and Autery in their individual capacities.[4]
Dupree and Autery filed a motion for a summary judgment as to the remaining claims that Earl had asserted against them. In an exhaustive October 2001 order, the federal district court concluded that the summary-judgment motion as to
 "[Earl's] federal procedural due process claim against defendant Dupree in his individual capacity based on failure to provide a pretermination hearing is DENIED. As to all remaining state and federal claims for monetary damages asserted against defendants Dupree and Autery in their individual capacities, defendants' motion for summary judgment is GRANTED."
Earl's claim against Dupree as to which summary judgment was denied involved allegations that Dupree had violated Earl's federal procedural-due-process rights by failing to provide Earl with a pretermination hearing in conjunction with the dispute between Earl and DYS concerning whether his alleged "job abandonment" constituted a resignation. As to that claim, the federal district court concluded that the requirements of Ala. Admin. Code (State Pers. Bd.), Rule 670-X-19-.01(1)(b)11., which defines "job abandonment" as "three days of unexcused, unreported absence," had not been satisfied because the letters from Earl's counsel to DYS expressly stated that Earl's absences should not be considered to be "unreported." The federal district court stated:
 "Because the evidence is undisputed that the absences were not unreported, the Court finds that they could not have constituted job abandonment/resignation and that [Earl's] separation from his employment could only have been a dismissal. Given that [Earl's] separation from his employment was a dismissal, the Court must consider whether [Ear]] had a property interest in his continued employment and whether he was deprived of that right without due process of law." *Page 553 
(Emphasis added.) The federal district court then concluded that "the law extant at the time of [Earl's] dismissal in 1996 required that [Earl], a classified Alabama Merit System employee, be given a pretermination hearing before being dismissed" and that Dupree was not entitled to "qualified immunity" concerning that claim even though he was acting within his discretionary authority when he terminated Earl's employment.
After the entry of the October 2001 order, Earl filed a motion for a partial summary judgment as to his remaining claim against Dupree and his claim for injunctive relief against Wood. The federal district court denied the motion in November 2001. Earl then filed a "Motion for Reconsideration." After reconsidering Earl's motion for a partial summary judgment, the federal district court entered an order stating that Earl was entitled to a summary judgment in regard to the liability aspect of his monetary-damages claim against Dupree, in his individual capacity, and his injunctive-relief claim against Walter Wood, Jr., in his official capacity, based on their undisputed "failure to provide [Earl] a pre-termination hearing." The court stated, "[t]he only issue remaining for trial is damages."
Thereafter, the federal district court conducted an ore tenus proceeding in December 2001 regarding the relief to be granted as to the two remaining claims in Earl's action. At trial, Dupree and Wood filed a motion for a judgment as a matter of law. In January 2002, the federal district court entered an order as to Dupree and Wood's motion, stating that Earl was entitled to "back pay damages in the amount of $794.80" as to Dupree[5] and to "injunctive relief in the form of a hearing before the State Personnel Board" as to Wood, "in his official capacity as the current Executive Director of the DYS."[6] The federal district court stated:
 "Although [Earl] did not avail himself of the remedies provided under the Alabama Merit System Act when he was discharged, this Court agrees with the court's holding in Wyatt v. Bronner, 500 F.Supp. 817, 821-22 (M.D.Ala.1980), that [Earl] was nevertheless entitled to a pretermination hearing under the Fourteenth Amendment and, thus, since he was denied that right, he is now entitled to a due process hearing before the *Page 554 
State Personnel Board to determine whether he was discharged `for cause.'
 "Accordingly, as in Wyatt, the Court hereby ORDERS that [Earl] be given a hearing before the State Personnel Board relative to reinstatement within sixty days of this Court's order. [Earl] must be furnished with specific charges at least ten days prior to the proposed hearing. If on such hearing, it is determined that there was not good cause for [Earl's] discharge, then [Earl] would be entitled to reinstatement and back pay to the date of reinstatement. If on such hearing, it is determined that there was good cause for discharging [Earl], then [Earl] would not be entitled to reinstatement, and back pay would be limited to the ten-day period already awarded by this Court. The Court specifically retains jurisdiction to enforce this order."
Contemporaneously with the entry of the January 2002 order regarding Dupree and Wood's motion for a judgment as a matter of law, the federal district court entered a "Final Judgment" that stated, in part: "The Court further renders judgment in favor of [Earl] against defendant Walter Wood, Jr., current Executive Director of DYS, for injunctive relief in the form of a hearing before the State Personnel Board, as set forth in the separate order entered this date."
Earl, Dupree, and Wood filed post-judgment motions, and Earl filed a motion for clarification of the judgment.[7] In February 2002 the federal district court denied the motions.[8]
Pursuant to the federal district court's judgment, DYS informed the Personnel Board that a hearing must be scheduled in regard to Earl's dismissal. The Personnel Board assigned the matter to an administrative *Page 555 
law judge ("ALJ"), who served as a hearing officer for the Personnel Board. See Personnel Bd. of Alabama v. King,456 So.2d 80, 81 (Ala.Civ.App. 1984).[9] On March 18, 2002, DYS sent Earl a letter stating:
 "This letter is formal notice that you were dismissed from your employment with [DYS] on October 10, 1996 for cause and sufficient reason. You were repeatedly ordered to report to work and failed to do so. You were instructed to report to work at the Thomasville facility on October 7, 1996 but failed to report on that date. By letter dated October 7, 1996 you were instructed to report to work on October 8, 1996 but failed to report to work on that date. By letter dated October 8, 1996, you were again instructed to report to work on October 9, 1996 but failed to report to work on that date. Your failure to report to work and your disregard and failure to comply with instructions from [DYS] are the cause and reason for your dismissal."
Earl responded to the March 2002 letter by contending that it did not provide the specific "charges" against him, that the only "charge" that had been mentioned in the October 10, 1996, letter was "job abandonment," and that no new "charge" could be asserted against him. He also argued that if the charge against him was job abandonment, the federal district court had already ruled in his favor on that issue.
In April 2002, DYS responded to Earl's allegations via a letter to the ALJ, which was copied to Earl. The April 2002 letter stated:
 "Pursuant to the [federal district court's judgment], [DYS] has provided Earl written notice of the cause for his discharge from [DYS]. See Ala. Code 1975, § 36-26-27 ('An appointing authority may dismiss a classified employee when-ever he considers the good of the service will be served thereby, for reasons which shall be stated in writing, [and] served on the affected employee. . . .') ; Ala. Admin. Code § 670-X-18.01(1) (same). The reason and cause for Earl's dismissal are his refusal and failure to report to work. See Ala. Admin. Code § 670-X-19-.01(1)(b) ('More serious violations . . . may result in suspension or discharge on the first offense, considering work record and length of service.'); Ala. Admin. Code § 670-X-19-.01(2) (listing illustrative and nonexclusive reasons for dismissal and noting `[t]he listing of violations above is not meant to be all inclusive and does not imply that discipline may not be imposed for other sufficient reasons.'). [Earl's] suggestion that [the March 2002] letter did not provide a charge is plainly and factually incorrect."
Earl filed a motion for a more definite statement as to the "charges" against him. The ALJ denied the motion, stating that the Personnel Board would comply with the federal district court's judgment, that DYS's March 2002 letter informed Earl of the reasons for his dismissal in October 1996, and that the letter was in compliance with the terms of the judgment.
The day before the scheduled hearing before the ALJ, Earl filed a motion in the federal district court requesting that that court enforce its judgment as to the *Page 556 
"charges" proffered against him and that it not allow DYS to expand the "charges" against him. Earl also filed an emergency motion in the administrative proceeding before the ALJ requesting a stay of the administrative hearing pending the federal district court's ruling on his motion to enforce the January 2002 judgment. The ALJ denied Earl's motion for a stay.
In June 2002, the ALJ conducted an ore tenus proceeding regarding whether DYS had good cause to discharge Earl based on the charge that Earl had repeatedly failed to report to work as ordered in October 1996.
On July 23, 2002, the federal district court entered an order stating that it had considered Earl's motion regarding the enforcement of its judgment, and particularly "whether the notice of specific charges provided to [Earl] prior to the hearing before an [ALJ] complied with the Court's order granting injunctive relief." The federal district court concluded, after reviewing the contents of the March 2002 letter to Earl from DYS: "The Court ordered the defendants to give [Earl] a dueprocess hearing after providing him with notice of the specificcharges against him, and it appears that the defendants havecomplied with that order. . . . [Earl's] claim is withoutmerit, and [he] is not entitled to the relief he seeks."[10] (Emphasis added.) See also note 8,supra.
On July 30, 2002, the ALJ entered a 21-page order containing both findings of fact and conclusions of law. In summary, the ALJ determined that Dupree had made a management decision to transfer Earl, that the transfer decision was for a good business reason,[11] that Earl never intended *Page 557 
to report to work in Thomasville, and that Earl had refused to report to work as instructed, despite his having been given an extended period of time to make arrangements regarding the transfer and despite DYS's effort to assist Earl in regard to transportation issues, if necessary. The ALJ recommended that the Personnel Board uphold Earl's dismissal.
Earl filed a lengthy exception to the ALJ's findings, and he requested that he be allowed to present oral argument to the Personnel Board. In September 2002, after reviewing Earl's exceptions and after hearing oral arguments from Earl, the Personnel Board adopted the ALJ's findings and it concluded that DYS's decision to dismiss Earl was supported by the evidence presented to the ALJ. The Personnel Board entered an order upholding Earl's dismissal.
Earl appealed to the Mobile Circuit Court from the Personnel Board's decision. Earl also filed a "Petition and Complaint" in which he asserted "claims" "concerning specific violations of law and various constitutional rights and protections" against the Personnel Board and the various individual defendants named in the second paragraph of this opinion.
In July 2003, the circuit court entered an order affirming the decision of the Personnel Board. The order stated, in part:
 "After review and consideration of the record of the State Personnel Board Hearing and other submissions the Court finds that [Earl's] substantial rights have not been prejudiced in any of the enumerated ways or otherwise [i.e., any of the ways listed in Ala. Code 1975, § 41-22-20(k)(1) through (k)(7)]. The agency action is not clearly erroneous, nor is it unreasonable, arbitrary or capricious.
 "[Earl] contends that his dismissal is prohibited by [Ala. Code 1975,] § 36-26-29, which forbids bringing `charges for dismissal or disciplinary action' after the expiration of three years from the date of `such cause' for the dismissal or action. In the first place, `such cause' has always been the failure of [Earl] to report for work in Thomasville. That failure was originally termed `job abandonment.' After the Federal Court decision, the same `cause' was assigned as grounds for dismissal. Second, the state could hardly initiate new proceedings against [Earl] for the same `cause' while [Earl's] Federal Court action pended.
 "The action of the State Personnel Board is affirmed and the Petition and Complaint is dismissed."
Earl filed a postjudgment motion; the circuit court denied that motion. Earl appealed to the Alabama Supreme Court; the appeal was transferred to this court on jurisdictional grounds. *Page 558 
On appeal, Earl makes arguments that are, in essence, attempts to relitigate numerous matters that he presented to the federal district court and on which he received an adverse ruling, most notably whether the Personnel Board was restricted to considering only "job abandonment" as a cause for Earl's dismissal at the Personnel Board hearing. Thus, Earl continues to argue that DYS presented a new "charge" against him at the Personnel Board hearing in violation of Ala. Code 1975, §36-26-29 ("[n]o charges for dismissal or disciplinary action shall be preferred against any employee in the classified service of the state after the expiration of three years from the date such cause became known to the authority having the power to dismiss or discipline such employee").
Notwithstanding Earl's contentions, as is clear from the foregoing discussion and the rulings of the federal district court, the due-process hearing before the Personnel Board was conducted in a manner contemplated by the federal district court's judgment.[12] The circuit court correctly concluded that the substance of the "charges" against Earl had not changed since October 1996 and that it would be nonsensical to expect DYS to purport to terminate Earl's employment for cause after it had deemed him to have resigned and, more importantly, while the issue whether he had in fact resigned was being litigated in federal court.
The Alabama Administrative Procedure Act, Ala. Code 1975, §41-22-1 et seq. ("the AAPA"), states: *Page 559 
"The [circuit] court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review-statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
 "(1) In violation of constitutional or statutory provisions;
 "(2) In excess of the statutory authority of the agency;
 "(3) In violation of any pertinent agency rule;
 "(4) Made upon unlawful procedure;
 "(5) Affected by other error of law;
 "(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 "(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."
Ala. Code 1975, § 41-22-20(k).
"[Dismissal by an appointing authority . . . is reviewable by the personnel board only to determine if the reasons stated for the dismissal are sustained by the evidence presented at the hearing." Johnston v. State Pers. Bd., 447 So.2d 752,755 (Ala.Civ.App. 1983). Also, based on the applicable provisions of the AAPA, both this court and the circuit court must take the administrative agency's order "as prima facie just and reasonable" and neither this court nor the circuit court may "substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Ala. Code 1975, §41-22-20(k); see also State Dep't of Human Res. v.Gibert, 681 So.2d 560, 562 (Ala.Civ.App. 1995). This court reviews a trial court's judgment regarding the decision of an administrative agency "without any presumption of its correctness, since [the trial] court was in no better position to review the [agency's decision] than" this court is. StateHealth Planning Res. Dev. Admin. v. Rivendell of Alabama,Inc., 469 So.2d 613, 614 (Ala.Civ.App. 1985).
The AAPA requires that in a contested case the written notice of hearing include "[a] short and plain statement of the matters asserted." Ala. Code 1975, § 41-22-12(b)(4).[13] This court has stated that charges in an administrative proceeding need not "`be drawn with the formality and exactness required in a court proceeding,'" Kid's Stuff Learning Ctr., Inc. v. StateDep't of Human Res., 660 So.2d 613, 621 (Ala.Civ.App. 1995) (quoting Goolsby v. Green, 431 So.2d 955, 959
(Ala. 1983)), and that we will not reverse an administrative decision on the basis of inadequate notice when the complaining party received adequate notice of the charges against him or her before the hearing. See 660 So.2d at 621; seealso Chafian v. Alabama Bd. of Chiropractic Exam'rs,647 So.2d 759, 762 (Ala.Civ.App. 1994).
 "The law does not require that the charges filed before administrative boards be drawn with the same refinements as pleadings in court. All that is required is that the charges given be *Page 560 
sufficient to warrant dismissal and specific enough to apprise the employee of the allegations against him."
Johnston, 447 So.2d at 756.
Like the plaintiff in Johnston, Earl is under the mistaken impression that due process requires that the "charges" against him refer to a limited list of items in the pertinent regulations. The pertinent regulation in the current case, Ala. Admin. Code (State Pers. Bd.), Rule 670-X-19-.01, is a nonexhaustive list of "violations" for which dismissal might issue; it is "not meant to be all inclusive and does not imply that discipline may not be imposed for other sufficient reasons." Ala. Admin. Code (State Pers. Bd.), Rule670-X-19-.01(2); see also Ala. Admin. Code (State Pers. Bd.), Rule 670-X-19.01(1)(b)(2) (defining "insubordination," a "violation" for which dismissal might issue on the first offense, as the "[f]ailure to follow an order; disobedience; failure to submit to authority as shown by demeanor or words").
Earl admitted that he understood that an employee could be dismissed if he or she refused to report to work as ordered. He simply misjudged what DYS's response would be when he continued to resist his transfer.
We have carefully reviewed the evidence presented to the ALJ, and it is clear that Earl was given notice of the "charges" against him and that the "charges" were "sufficient to warrant dismissal and specific enough to apprise [him] of the allegations against him." Likewise, we have carefully reviewed Earl's various other contentions and conclude that a further discussion of those contentions is not warranted.
APPLICATION OVERRULED; NO-OPINION AFFIRMANCE OF JUNE 24, 2005, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.
[1] Earl argued, in part, that he could not transfer to Thomasville because his daughter was in school in Mobile, because his wife worked in Mobile, and because his family's only vehicle, a Toyota truck, was not dependable enough for the trip to Thomasville. We note that Earl admitted that he and his wife continued to drive the Toyota truck for more than six years after his dismissal by DYS. It is also undisputed that DYS offered Earl financial assistance to assist him with relocation expenses, if he chose to relocate, and it offered to assist him by modifying his work schedule so that he could commute to Thomasville with other employees who lived in the Mobile area.
[2] We note that DYS had attempted to terminate Earl's employment on two prior occasions. On the first occasion, in 1989, DYS made several charges against Earl that it said warranted his dismissal. The Personnel Board concluded that some of the charges were justified but that dismissal was too harsh a punishment. On the second occasion, in 1990-91, the Personnel Board concluded that DYS had attempted to transfer Earl to Montgomery for punitive reasons and that DYS had then terminated Earl's employment for refusing the transfer assignment. Again, the Personnel Board required that Earl be reinstated.
[3] The record on appeal does not contain all of the pleadings and motions filed with the federal district court. Instead, it contains selected orders of the federal district court, a transcript of the trial before the federal district court, and the trial exhibits.
We note that the dismissed claims included, in part, a claim by Earl relating to "federal posttermination procedural due process." As to that claim, the federal district court stated "that the posttermination administrative procedures available to [Earl] satisfied the requirement of procedural due process and that [Earl's] failure to avail himself of those procedures foreclosed any claim for violation of federal posttermination procedural due process rights in this case." Cf.McKinney v. Pate, 20 F.3d 1550, 1564 (11th Cir.1994) (holding that when the plaintiff was provided with a pretermination hearing, but failed to apply for an available posttermination hearing and chose instead to pursue a § 1983 claim in federal court, the presence of an adequate state posttermination remedy "mandates that . . . no [pretermination] procedural due process violation occurred" as a result of alleged impropriety in the pretermination hearing). Butsee Stallworth v. City of Evergreen, 680 So.2d 229, 234
(Ala. 1996) (questioning the reasoning in McKinney
and whether "a denial of due process at the pretermination level can be fully remedied by a procedurally adequate post-termination hearing").
[4] The remaining claims against Dupree and Autery related to federal due-process allegations, state due-process allegations, and deprivation-of-a-liberty-interest allegations.
[5] In regard to the damages award, the January-2002 order stated:
 "In the [October 2001] summary judgment order . . ., this Court ruled that [Earl] was entitled to recover only those back pay damages accruing between the date of [his] discharge from employment and the date that he was given `an opportunity to be heard,' which in this case was the date that his appeal deadline expired under Alabama Code [1975], § 36-26-27(a), a period of ten days. . . .
 "In the present case, the evidence submitted through [Earl's] exhibits showed that, at the time of his dismissal, [Earl] earned $794.80 by-weekly (ten working days). Accordingly, the Court finds that [Earl] is entitled to the sum of $794.80, representing the ten days of back pay for which [Earl] is allowed to recover for defendants' deprivation of his right to a pretermination hearing."
The federal district court refused to award Earl punitive damages, stating that it was not convinced that Dupree's failure to provide Earl with a pretermination hearing was done "with malice." Specifically, the federal district court stated that
 "the evidence at trial was uncontradicted that Dupree, the individual who dismissed Earl without a pretermination hearing, did so because he considered Earl's failure to report to work an abandonment of his job, not requiring a pretermination hearing. While Dupree's interpretation of the law was erroneous, his actions clearly were not malicious."
[6] We note that the Personnel Board was not a party to the federal district court proceeding.
[7] Wood argued in his postjudgment motion that Earl was not entitled to a formal reinstatement hearing before the Personnel Board because he did not pursue his right to appeal his dismissal to the Personnel Board after his employment was terminated. Instead, Wood argued, the court should have awarded Earl a less formal pretermination hearing before Wood, as required under DYS's regulations. The federal district court disagreed with Wood's contention, stating:
 "A pretermination hearing before the Executive Director to determine if [Earl's] conduct warranted that he be dismissed is precisely the sort of hearing that [Earl] should have been give prior to his discharge. Defendants did not do that. Instead, they chose simply to dismiss [Ear|] without any sort of hearing whatsoever. Once an employee has been dismissed without a hearing, an informal pretermination hearing is no longer possible. In circumstances such as those, the Court may award a hearing relative to reinstatement as injunctive relief for failure to provide a pretermination hearing, even if [Earl] did not appeal the dismissal administratively. See Wyatt [v. Bronner, 500 F.Supp. 817 (M.D.Ala. 1980)]. As the court held in Wyatt, if on such hearing it is determined that there was not good cause for [Earl's] discharge, then [Earl] would be entitled to reinstatement and back pay to the date of reinstatement. . . . If on such hearing, it is determined that there was good cause for discharging [Ear]], then [Earl] would not be entitled to reinstatement, and back pay would be limited to that already awarded by this Court."
(Footnote omitted.)
[8] For purposes of the present case, we note that the federal district court denied Earl's request that it clarify its judgment as to the requirement that "[Earl] must be furnished with specific charges at least ten days prior to the proposed hearing." Earl apparently contended, as he does on appeal, that the only "charge" on which his dismissal could be based was "job abandonment." However, in denying Earl's motion for clarification, the federal district court stated that its judgment required that Earl "be provided with the specificcharges upon which defendant Wood [the current director of DYS] claims his dismissal was based. . . . Because the notice requirement is self-explanatory, . . . [Earl's] motion for further clarification is DENIED." (Emphasis added.)
[9] Earl argues that Ala. Code 1975, § 36-26-27(a), does not authorize the use of a hearing officer. However, inKing, we concluded that the use of a hearing officer was within the authority of the Personnel Board based on applicable regulations adopted pursuant to the Board's regulatory authority. See Ala. Code 1975, §36-26-9; Ala. Admin. Code (State Pers. Bd.), Rule670-X-5-.08.
[10] We note that Earl's appellate brief is devoid of any discussion (1) of his attempt to have the federal district court stay the hearing before the ALJ or (2) of the federal district court's ruling as to the enforcement of its judgment.
[11] At the hearing before the ALJ, Dupree, who was the executive director of DYS that dismissed Earl, testified that he transferred Earl to Thomasville because
 "[t]he Department was under federal court order to do certain things. . . . And we had started the process of trying to get additional funding from the Legislature to meet the mandates of the court order. And 1 had begun the process after my appointment of looking throughout the Department at what we had to do in terms of legal and court-ordered mandates versus things that we were doing that we may have thought were a good idea, but were not necessarily mandates.
 "And as a result of that, there were several personnel moves and actions that were taken. I looked at facility staffing to make sure that, one, we had enough where we needed them and in some cases, did we have too many people at a location.
 "As it relates to Mr. Earl's situation, he was working in the CPS program, which was Community Placement and Supervision program. This program was started prior to my administration on a foundation grant that ultimately began to absorb state revenue to continue.
 ". . . .
 "One of the things I had to look at in whether or not we continued [the CPS] program, though, which I thought was a very good program, is that under the law that created [DYS], it was clear that after-care was a local responsibility and not necessarily a state responsibility. And, obviously, the local governments can decide whether or not they will do that or not or to whatever extent and we don't really have a say in that.
 "So, consequently, in looking at resources and the fact that I had hundreds of kids backed up waiting to come into the system and we were also embarking upon an initiative where we were beginning to place kids in privately owned facilities and we had to have resources to have monitoring and licensing and to have people to check on what was going on more often in those facilities than at any other point in the history of [DYS]. . . .
 "So consequently, I made a decision that we were not going to continue CPS and that some of those people would be used to monitor, just depending upon their classifications and all. And some people were moved around or given other assignments.
 "If I recall, Mr. Earl was a Youth Services Aide. And at that time, the closest available slot in his classification that I had vacant was in our Thomasville facility, which is — I'm going to roughly say about 100 miles north of Mobile. And that was where I had assigned him. I had to make a similar decision regarding another employee, who was not working in this program, but who I determined to be in an excess position in our Mobile group home; and I had assigned him to work at that same facility, also.
 ". . . .
 "[W]hat I tried to do was look at the classifications of people and looking at the classifications that we needed at different locations, and I tried to match people up based upon their merit class with the closest available vacancy that we had."
[12] Earl is in essence complaining that he received the relief that he had requested from the federal district court, i.e., a hearing before the Personnel Board in regard to his dismissal. He did not convince the federal district court in his postjudgment motions that the "charges" against him should be restricted to "job abandonment." He now requests that this court enforce the federal district court's judgment in a manner that is inconsistent with the federal district court's own orders. In other words, Earl urges this court to adopt an interpretation of the federal district court's judgment that would require us to conclude that the only cause upon which his dismissal might have been based was "job abandonment." We reject this argument for two reasons. First, such an interpretation of the federal district court's judgment would require us to conclude that, despite its denial of Earl's motion for clarification and his motion to stay the proceedings before the ALJ, the federal district court intended for the Personnel Board to hold a hearing to determine whether Earl's termination was for "good cause" when the federal district court had purported to eliminate the only "charge" upon which Earl claims the termination could have been based, i.e., "job abandonment." Such a reading of the judgment would mean there was no need for a hearing; this is clearly not what the federal district court intended.
Second, Earl's argument confuses the nature of the federal district court's decision. The federal district court determined that DYS had wrongly assumed that Earl's failure to report to work as ordered was sufficient to constitute "job abandonment/resignation." (Emphasis added.) According to Dupree, when an employee resigned, DYS was not requiredto follow the pretermination procedures applicable to a dismissal from employment. However, the essence of the federal district court's judgment was that Earl had not resigned (but that he had been dismissed), a predicate that then allowed the federal district court to conclude that "[Earl] was entitled to a pretermination hearing under the Fourteenth Amendment and . . . since he was denied that right, he is now entitled to adue process hearing before the State Personnel Board to determine whether he was discharged for cause." (Emphasis added.) In other words, Earl was entitled to a due-processhearing (the court later referred to the hearing as a "reinstatement hearing . . . to determine whether [Earl] was discharged for cause") to determine whether the reasons for his dismissal, i.e., his failure to report to work for three consecutive days despite direct orders that he do so, constituted "good cause" for Earl's dismissal.
[13] DYS's Policy and Procedures Manual provides that "[a]fter an employee has completed the required probationary period, s/he may not be terminated or demoted without good cause, subject to the Rules of the State Personnel Board, Chapter 670-X-18, and the State Merit System." The manual further provides that an employee will not be dismissed from employment "for cause" without first providing the employee with (1) "a letter . . . informing him/her of the reason for the recommendation that he/she be dismissed" and (2) an opportunity to have "a pretermination hearing before the Director of DYS."